UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROLAND JOHNSON,

    Plaintiff,                                  Civil Action No. 10-14357

v.                                         HON. THOMAS L. LUDINGTON
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Roland Johnson brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment (Dkt #11) be GRANTED and Plaintiff's motion (Dkt #10) DENIED.

## PROCEDURAL HISTORY

On October 21, 2008, Plaintiff filed applications for Supplemental Security Income ("SSI") (Tr. 96-98) and Disability Insurance Benefits ("DIB") (Tr. 99-101) alleging disability as of July 18, 2008 (Tr. 96). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on December 11, 2009 in Flint, Michigan before

Administrative Law Judge ("ALJ") Peter M. Dowd (Tr. 32). Plaintiff, represented by attorney Webster C. Tally, testified, as did Vocational Expert ("VE") Timothy L. Shaner (Tr. 37-54, 54-57). On January 21, 2010, ALJ Dowd found that Plaintiff was not disabled (Tr. 28). On August 27, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on October 29, 2010.

## BACKGROUND FACTS

Plaintiff, born October 2, 1960, was 49 when the ALJ issued his decision (Tr. 28, 96). He completed high school and worked previously as a loan officer (Tr. 110, 113). He alleges disability as a result of a rotator cuff tear (Tr. 109).

### A.     Plaintiff's Testimony

Plaintiff testified that he lost his home to foreclosure one month before the hearing and was currently renting a house from a friend (Tr. 37). He reported that he and his wife were currently separated and that they shared custody of their 14-year-old son (Tr. 39). Plaintiff indicated that in April of 2008, he received vocational training in home inspection (Tr. 40, 43). He reported that between 1994 and 1998 he worked as a production supervisor for a biweekly paper and between 1998 and 2008 as a loan officer for a number of mortgage companies (Tr. 40). Plaintiff stated that he worked briefly in June and July of 2008 as a home inspector, adding that he worked for two weeks in July, 2008 as a truck driver (Tr. 43, 45). Plaintiff acknowledged the he was still receiving unemployment checks (Tr. 45). Plaintiff testified that he sustained a right shoulder injury (torn labrum) in 2004 and underwent surgery in April, 2008 (Tr. 47-48). He also reported that he had been diagnosed

with arthritis of the lower spine and right shoulder (Tr. 48).

In response to questioning by his attorney, Plaintiff testified that shoulder problems created range of motion limitations and spasms, adding that right arm spasms caused him to drop items (Tr. 50). He reported that his physical therapy had been cut short by a month by the loss of his insurance (Tr. 51). He indicated that his lower back pain radiated into his legs (Tr. 51). He stated that in the month prior to the hearing, he fell, sustaining a pectoral muscle tear (Tr. 52). He attributed the fall to back problems (Tr. 52). Plaintiff reported that his daily Vicodin use created drowsiness (Tr. 52). He estimated that his pain level when not taking Vicodin was an "8" on a scale of 1 to 10 and a "4-5" when using medication (Tr. 53).

### B.  Medical Evidence[1]

**1. Treating Sources**

In September, 2008, Plaintiff sought treatment for back and shoulder pain following a June 1, 2008 injury sustained while moving a freezer (Tr. 176). The following month, Garry Tamez, D.O. observed range of motion limitations in the right shoulder, remarking that

---

[1] The numbering for transcript pages 187 through 313 are completely obscured by a black bar, requiring the Court to hand-number a print copy of each page. The Commissioner's failure to provide readable page numbers for a large portion of the transcript violates both the spirit and letter of its obligations under the third sentence of Section 405(g) ("[T]he Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based"). *See also Pierce v. Apfel,* 173 F.3d 704, 708 (8th Cir.1999) ("It is the responsibility of the Commissioner to make sure that a complete, readable, medical record is available to all parties").

Plaintiff had experienced shoulder problems for more than four years (Tr. 174, 286). Plaintiff was urged to "keep the shoulder moving" to avoid stiffness (Tr. 174). An MRI showed that a labral tear had increased "slightly" since the previous study (Tr. 169). Additional imaging studies showed no evidence of right shoulder arthritis (Tr. 171). In November, 2008, Plaintiff reported continued shoulder pain (Tr. 254, 283). He was again encouraged to "keep the shoulder moving" (Tr. 254).

In January, 2009, imaging studies of the lumbar spine showed advanced disc disease at L5/S1 with mild degenerative changes in the remaining lumbar segments (Tr. 282). In February, 2009, Plaintiff reported that his shoulder pain was increasing (Tr. 247, 277). In April, 2009, Kurt A. Menapace, M.D. performed right shoulder surgery without complications (Tr. 190-192). Treating notes made later the same month show "good progress" (Tr. 271). Plaintiff was advised to begin "gentle" exercises (Tr. 270). The following month, he reported that his shoulder improvement was good but that he was experiencing back pain (Tr. 266). Plaintiff sought emergency treatment the same month for back pain (Tr. 300). In June, 2009, physical therapy notes state that additional therapy was recommended to address remaining range of motion limitations (Tr. 292). Plaintiff reported continuing back pain (Tr. 367). Dr. Tamez's June 29, 2009 treating notes indicate that Plaintiff showed an improved range of motion and lessening pain, but intermittent muscle spasms (Tr. 225). Plaintiff reported that swimming exacerbated shoulder problems (Tr. 361). July, 2009 physical therapy notes state that Plaintiff had "no complaints" (Tr. 359). Notes from the same month also state that Plaintiff "denie[d] pain" (Tr. 357). August therapy notes

show continued improvement (Tr. 344). Treating notes from September, 2009, state that Plaintiff was prescribed Vicodin (Tr. 323). In October, 2009, Plaintiff reported continued shoulder improvement, but stated that he did not have a full range of motion (Tr. 306). A therapy evaluation indicates that Plaintiff experienced moderate difficulty walking short or long distance, running, pushing, pulling, reaching, grasping, lifting, and carrying but did not otherwise experience significant postural or manipulative limitations (Tr. 336).

### 2. Consultive and Non-Examining Sources

In December, 2008, Janis Canon performed a non-examining Residual Functional Capacity Assessment on behalf of the SSA (Tr. 179-186). She found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 180). Canon found that Plaintiff could push and pull only frequently (as opposed to *constantly*) in the upper extremities (Tr. 180). Plaintiff was deemed capable of frequent balancing, stooping, kneeling, crouching, crawling, and climbing of stairs and ramps (Tr. 181). He was limited to occasional climbing of ladders, ropes, and scaffolds (Tr. 181). His manipulative impairments consisted of a limitation on reaching in all directions (Tr. 182). Canon found the absence of visual, communicative, or environmental limitations (Tr. 182-183). She concluded that Plaintiff's allegations of limitation were "partially credible," finding that Plaintiff's shoulder condition would resolve to the level reflected in the Assessment within 12 months (Tr. 184).

In November, 2009, Ravi K. Lakkaraju, M.D. performed a consultive examination of

Plaintiff, finding that Plaintiff was unable to "walk or stand for more than 30 minutes"[2] (Tr. 381). He observed a reduced range of spine motion (Tr. 381). Dr. Lakkaraju found that "[a]ny repetitious activity such as bending, reaching, lifting, twisting or carrying cause[d] severe flare-up of his lower back pain" (Tr. 381). Dr. Lakkaraju stated that Plaintiff appeared "quite functionally disabled from his impairments" (Tr. 381).

### C.  Vocational Expert Testimony

VE Timothy Shaner classified Plaintiff's former work as a loan officer as skilled and exertionally light[3] (Tr. 55, 165 ). He testified that his findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 55). The VE stated that transferrable skills from the loan officer position would include "interviewing skills," the "ability to evaluate data, customer service skills, computer input, and supervising the time and work of others" (Tr. 56). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work history:

> [A]ssume . . . that the individual, with both hands, can maximally lift weights of 20 pounds, can lift, with the right, dominant hand only weights of less than

---

[2] While Dr. Lakkaraju's assessment is entitled "Progress Notes," treating records from the previous month show that Plaintiff was referred to Dr. Lakkaraju to perform a one-time "disability evaluation"(Tr. 383).

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> 10 pounds, that the individual, in a potential work setting, can stand and walk six of eight hours or sit for six of eight hours but would need the ability to alternate between sitting and standing five minutes for ever hour worked and that the individual could do no overhead reaching in a potential work setting with the right arm and hand. Now, would there be skilled or semiskilled jobs, in the American economy, that such an individual – well, first of all, would such an individual be able to perform [Plaintiff's] past work?

(Tr. 56). The VE stated that the above limitations would not preclude the individual from performing Plaintiff's past relevant work as a loan officer (DOT 186.267-018) as either generally performed in the national economy (sedentary) or as performed by Plaintiff (light) (Tr. 56-57). In response to questioning by Plaintiff's attorney, the VE testified that "accepted norm for absenteeism" would be two days per month or less (Tr. 57).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of right rotator cuff injury and degenerative disc disease of the spine with thoracolumbar scoliosis and scapulothoracic myofascial pain, but that the conditions did not meet or medically equal an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 24-25). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work, requiring "the opportunity to alternate between sitting and standing for 5 minutes every hour" and "no overhead reaching with the right arm and hand" (Tr. 25). The ALJ determined that Plaintiff could do his former work as a loan officer as previously performed (Tr. 27).

In support of the non-disability finding, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his physical conditions were

"not credible to the extent they [were] inconsistent with the residual functional capacity assessment" (Tr. 26). The ALJ observed that Plaintiff's shoulder surgery had been successful and did not require further surgery or hospitalization (Tr. 26). The ALJ noted that Plaintiff's allegations of daytime drowsiness as a result of Vicodin use were uncorroborated by treating records (Tr. 27). He attributed Plaintiff's job loss to the economic downturn rather than physical problems, finding that "the evidentiary record as a whole shows the claimant's problems with pain are not of such significance" (Tr. 27).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

-8-

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff argues that the hypothetical limitations posed by the ALJ did not reflect his full degree of impairment. *Plaintiff's Brief* at 6-12, *Docket #10.* He makes the overlapping argument that Dr. Lakkaraju's November, 2009 disability opinion ought to have been

included in the hypothetical question. *Id.* at 7-10 (citing Tr. 381).   Plaintiff contends that the failure to account for his full degree of impairment in the hypothetical question invalidates the VE's findings (Tr. 381). *Id.* at 6-7.

*Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's impairments. *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

As discussed above, the present hypothetical limited Plaintiff to lifting 20 pounds on the left and "less than 10 pounds" on the right, a preclusion on overhead reaching on the right, and work that allowed Plaintiff to alternate between sitting and standing for up to five minutes each hour (Tr. 56).  Contrary to Plaintiff's claim, substantial evidence supports the ALJ's omission of a further limitations.  The ALJ noted that Plaintiff was able to care for his personal needs, prepare meals, walk to the store, and socialize (Tr. 26).  Citing the treating record, the ALJ acknowledged range of motion limitations but noted that a October, 2009 physical therapy discharge showing 75 percent improvement and the ability to perform home exercises independently (Tr. 25).

Aside from the material cited by the ALJ, the transcript as a whole supports the choice of hypothetical limitations.  Three months after the April, 2009 surgery, Plaintiff

-10-

reported "no pain" and "no complaints" (Tr. 357, 359).  As of October, 2009, Plaintiff was deemed able to bend, sit squat, balance, kneel and climb stairs without significant difficulty (Tr. 336).    The physical therapist's observation that Plaintiff continued to experience difficulty in overhead reaching was included in the hypothetical question (Tr. 56, 336). Because substantial evidence easily supports the ALJ's inclusion of certain limitations in the hypothetical question (and exclusion of others) the argument that the VE's testimony was invalidated on this basis is unavailing.[4]

Plaintiff conflates the hypothetical question issue with the secondary argument that the ALJ erred by failing to adopt  Dr. Lakkaraju's November, 2009 disability opinion. *Plaintiff's Brief* at 7-10.  Citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004), Plaintiff argues that the ALJ further erred by failing to explain his reasons for rejecting Dr. Lakkaraju's opinion.  *See also Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson,* F.3d 541, 544; 20 C.F.R. § 404.1527(d)(2)).

Contrary to Plaintiff's assertion, Dr. Lakkaraju's opinion was not entitled to controlling weight.  Because Dr. Lakkaraju was a one-time consultive physician "the treating physician doctrine simply does not apply." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994).  Thus, Dr. Lakkaraju's findings were "entitled to no special degree of deference."

---

[4]Further, as discussed in Section **B.,** the VE's testimony was peripheral to the ALJ's ultimate finding that Plaintiff could do the job of a loan officer as actually performed.

*Id.* (citing *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)). For identical reasons, the ALJ was not obliged to provide "good reasons" for declining to adopt Dr. Lakkaraju's the disability opinion. *Wilson,* at 544.

### B. The Step Four Finding

Plaintiff also argues that substantial evidence does not support the finding that he could perform his former job as a loan officer. *Plaintiff's Brief* at 6-7. He contends that his former position, as performed, "did not rise to the definition of a loan officer as described in the Dictionary of Occupational Titles" (DOT 186.267-018). *Id.*

This argument is also unavailing. The fact that Plaintiff's former duties as a loan officer differed from the way the job is performed in the national economy does not invalidate the Step Four finding. At Step Four, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed by the claimant*. SSR 82-61. If so, the claimant is not disabled. If not, the Commissioner *then* considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, if a claimant has the RFC to work at his or her past job as actually performed (even if that particular job is less demanding than the work as generally performed or even if it involves fewer hours or greater opportunity for rest), he or she will be found not disabled at step four.[5] *Stephens v. Shalala,* 50 F.3d 538, 542 (8th Cir.1995). As such, the

---

[5] At Step Four, a three-prong test must also be met in order to find that a claimant can return to his past relevant work "(1) a finding of fact as to the individual's RFC; (2) a finding

fact that the DOT description of a loan officer's duties (as generally performed) exceeded the vocation preparation requirements of Plaintiff's former job as actually performed is irrelevant to the analysis.

More fundamentally, in making his Step Four finding that Plaintiff could return to his former work, the ALJ was permitted but not required to use the VE. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814 (3rd Cir.2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). Thus, the fact that the ALJ's ultimate conclusion that Plaintiff could do his former job as *actually* performed deviates from the VE's testimony of how the loan officer position is *generally* performed, does not invalidate the Step Four determination.

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate impairments brought about by shoulder and back conditions or his financial difficulties. Nonetheless, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. That I might draw a different conclusion based on these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded

---

of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82-62. Here, after finding an RFC, the ALJ thoroughly discussed the duties of Plaintiff's former job duties and the rationale for finding that the RFC did not preclude the job of loan officer as performed (Tr. 25, 27).

to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment (Dkt #11) be GRANTED and Plaintiff's motion (Dkt #10) DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                    s/ R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

Date: October 31, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on October 31, 2011.

                                    s/Johnetta M. Curry-Williams
                                    Case Manager